```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SECURITIES and EXCHANGE
COMMISSION,

                    Plaintiff,         MEMORANDUM OPINION
                                       AND ORDER

        -against-
                                       10 Civ. 1302 (MGC)

GREENSTONE HOLDINGS, INC., HISAO
SAL MIWA, JOHN B. FROHLING, DANIEL
D. STARCZEWSKI, JOE V. OVERCASH,
JR., FRANK J. MORELLI, III, THOMAS
F. PIERSON, JAMES S. PAINTER, III,
and VIRGINIA K. SOURLIS,

                    Defendants,

ACTIVE STEALTH, LLC, BAF
CONSULTING, INC., BLUEWATER
EXECUTIVE CAPITAL, LLC, EMERGING
MARKETS CONSULTING, LLC, KCS
REFERRAL SERVICES, LLC, MBA
INVESTORS, LTD., NEW AGE SPORTS,
INC., POWER NETWORK, INC., PROJECT
DEVELOPMENT, INC., SEVILLE
CONSULTING, INC., STARR
CONSULTING, INC., TUSCANY
CONSULTING, INC., and YT2K, INC.

                    Relief Defendants.

----------------------------------X

APPEARANCES:

        SECURITIES and EXCHANGE COMMISSION
        3 World Financial Center, Room 400
        New York, New York 10281

        By: Jack Kaufman, Esq.
            Alexander Janghorbani, Esq.
```

```
THE KILLIAN FIRM, P.C.
Attorneys for Defendant Virginia K. Sourlis
555 Route 1 South, Suite 430
Iselin, New Jersey 08830

By:  Eugene Killian, Jr., Esq.
```

**Cedarbaum, J.**

The Securities and Exchange Commission ("SEC") brings this enforcement action under Section 5 of the Securities Act of 1933 and Section 10(b) of the Exchange Act of 1934 against attorney Virginia K. Sourlis. Both parties have moved for summary judgment on liability. At oral argument on November 16, 2012, I granted the SEC's motion for summary judgment for aiding and abetting a violation of Section 10(b) and denied both parties' motions for summary judgment for a primary violation of Section 10(b). I reserved decision on the Section 5 claim. The parties dispute whether Sourlis's actions rise to the level of participation necessary for a Section 5 violation. For the reasons that follow, the SEC's motion for summary judgment is granted, and Sourlis's motion is denied.

## FACTS

Greenstone was incorporated in 2004 by Hisao Sal Miwa. In December 2005, with Greenstone facing a severe liquidity crisis, Miwa arranged to convert Greenstone into a publicly traded company. Greenstone acquired the shares of a public shell company and hired Corporate Stock Transfer, Inc. ("CST") to serve as its stock transfer agent. From September 2006 through June 2008, Greenstone distributed millions of shares of unregistered stock to the public.

Section 5 of the Securities Act of 1933 makes unlawful the public sale of unregistered securities.  15 U.S.C. § 77e.  At the time of the sales at issue, Rule 144(k)[1] exempted securities from registration before public sale if the securities were issued privately, solely in exchange for restricted securities of the same company, if the restricted securities were more than two years old.  17 C.F.R. § 230.144(k).  To sell Greenstone shares publicly, the company and its counsel sent legal opinion letters to CST stating facts that, if true, would have supported this exemption from registration under Rule 144(k).

Sourlis wrote one such letter dated January 11, 2006, and John Frohling, counsel to Greenstone, sent her letter to the transfer agent.  The letter stated that shares could be issued in exchange for $77,339.65 worth of convertible promissory notes that had been issued by Greenstone's predecessor corporation to "various vendors" on or before January 10, 2004.  The letter represented that on January 10, 2006, these notes had been assigned and endorsed to four entities, which were Greenstone investors.  Sourlis stated that no consideration was received by the company or by the vendors (referred to by Sourlis as "Original Note Holders") in connection with the assignment, and that no commissions were paid in connection with the assignment.

---

[1] In February 2008, Subsection 144(k) was eliminated and substantively similar provisions were added to other parts of the rule.  Revisions to Rules 144 and 145, 72 F.R. 71546-01.

4

Sourlis stated that she had been told by the vendors that the original convertible notes had been held for at least two years prior to the assignment and that none of the vendors were "affiliates" of the company under Rule 144.  Accordingly, Sourlis concluded that the shares could be issued without a legend, and CST thereafter issued over 6 million shares without a restrictive legend.

However, the convertible notes described by Sourlis did not even exist.  Therefore, Sourlis's statement that she was informed by the vendors that they had held the notes for at least two years was necessarily false.  Likewise, Sourlis's other statements -- that the company had informed her that the notes were issued to various vendors; that the notes had been assigned to the four entities; and that no consideration was received by the company or vendors in the assignment for the notes -- were also false.

### DISCUSSSION

To prove a violation of Section 5 of the Securities Act, the SEC must show that: (1) the defendant directly or indirectly offered to sell securities; (2) no registration statement was in effect for the offered securities; and (3) interstate means were used in connection with the offer or sale.  <u>Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London</u>, 147 F.3d 118, 124 n.4 (2d Cir. 1998).

A person not directly engaged in the transfer of the title of a security can be held liable if she has "engaged in steps necessary to the distribution of [unregistered] security issues." SEC v. Greenstone Holdings, Inc., No. 10 Civ. 1302, 2012 WL 1038570, at *11 (S.D.N.Y. Mar. 28, 2012) (quoting SEC v. Chinese Consol. Benevolent Ass'n, Inc., 120 F.2d 738, 741 (2d Cir. 1941)). "The participation must be substantial, not de minimis." Id. The necessary participant test "recalls the first part of a proximate cause analysis," asking "whether, but for the defendant's participation, the sale transaction would not have taken place." SEC v. Boock, No. 09 Civ. 8261 (DLC), 2011 WL 3792819, at *16 (S.D.N.Y. Aug. 25, 2011); see also SEC v. Universal Express, Inc., 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007), aff'd, SEC v. Altomare, 300 Fed. App'x 70 (2d Cir. 2008)(internal quotations omitted). There is no need to prove scienter. Id. at 422.

There is no genuine issue of material fact as to Sourlis's Section 5 liability. It is undisputed that the second and third elements are met. The only issue is whether Sourlis's participation satisfies the requirement that she directly or indirectly offered to sell securities. CST required a legal opinion letter providing the authority to issue the unregistered shares without a restrictive legend. It would not have issued the shares without Sourlis's letter. This is sufficient to hold

an attorney liable under Section 5.  Greenstone, 2012 WL 1038570, at *11; SEC v. Czarnik, No. 10 Civ. 745 (PKC), 2010 WL 4860678, at *11-*12 (S.D.N.Y. Nov. 29, 2010).  The fact that other attorneys also supplied false legal opinions in different, separate issuances of Greenstone shares cannot absolve Sourlis from liability for her participation in the transaction at issue here.  Likewise, any alleged lack of diligence on the transfer agent's part cannot relieve Sourlis of liability.

Sourlis also argues that because Frohling attached an exhibit to Sourlis's letter detailing the number of shares to be issued, her letter alone would not have been sufficient for CST's purposes.  The parties dispute what was intended to be attached as an exhibit to Sourlis's letter, but that dispute is immaterial.  Sourlis's opinion letter clearly states that a transfer agent could rely upon it, and it repeatedly refers to the issuance of shares.  CST testified that it would accept an opinion letter that did not specify the precise number of shares if the number of shares could be calculated.  Here, Sourlis's letter states that it applies to "[a]ll underlying shares of common stock" of convertible promissory notes worth $71,339.65.

Finally, in post-argument briefing, Sourlis argues that she has rebutted the SEC's prima facie case under Section 5 by proving the applicability of a registration exemption.  See SEC v. Cavanagh, 445 F.3d 105, 111 n. 13 (2d Cir. 2006).  She argues

7

that an exemption applies because the shares were issued more than a year after she wrote the opinion letter. This argument is without merit. Because the issuance was based upon the conversion of promissory notes that did not even exist, it is not clear how the time holding requirement in Rule 144(d)(1) applies. Further, Rule 144(d)(1) is one of several conditions imposed by that rule, and there is no indication that the other requirements were met. Sourlis cites to no authority explaining how that provision creates what she calls a "safe harbor" under these facts. Moreover, even if the convertible notes did exist, they would not constitute securities within the meaning of Rule 144 because they merely formalized various accounts payable Greenstone's predecessor incurred in the ordinary course of business. See Reves v. Ernst & Young, 494 U.S. 56, 65-66, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990).

## CONCLUSION

For the foregoing reasons, the SEC's motion for summary judgment on Section 5 liability is granted, and Sourlis's motion is denied.

SO ORDERED.

Dated:    New York, New York
          July 10, 2013

                                      S/_____
                                         MIRIAM GOLDMAN CEDARBAUM
                                         United States District Judge